Esther Kim Chang (SBN 258024)
echang@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 992-4560

Attorney for Non-Party Movant
MARQETA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Subpoenas to Marqeta, Inc. in connection with:<br><br>IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>GRUBHUB HOLDINGS, INC., et al.,<br><br>                Plaintiffs,<br><br>       v.<br><br>VISA INC., et al.,<br><br>                Defendants. | Misc. Case No. _____<br><br>E.D.N.Y. Case Nos. 1:19-cv-06555-MKB-VMS and 1:05-md-01720-MKB-VMS (Lead Case)<br><br>**NON-PARTY MARQETA, INC.'S MOTION TO QUASH SUBPOENA**<br><br> Date:<br> Time:      a.m. |

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on _____, 2022, at _____ a.m./p.m. or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, Non-Party Marqeta, Inc. will and hereby does move this Court to quash the subpoenas served by Plaintiffs ("Antitrust Plaintiffs") and Defendant Visa Inc. on Marqeta in connection with an antitrust case pending in the United States District Court for the Eastern District of New York, captioned *GrubHub Holdings, Inc., et al. v. Visa Inc., et al.*, Case No. 1:19-cv-06555-MKB-VMS (E.D.N.Y.).  This case is one of several related cases, with the lead case captioned *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720-MKB-VMS (E.D.N.Y.).

Marqeta asks this Court to quash the subpoenas served by Antitrust Plaintiffs and Defendant Visa Inc. on Marqeta because the subpoenas subject Marqeta to an undue burden by:  (1) seeking documents that Antitrust Plaintiffs should obtain from the defendants in the underlying antitrust action; (2) seeking documents for which Antitrust Plaintiffs have not established relevance; and (3) seeking access to highly confidential (and irrelevant) information, which is commercially sensitive to both Marqeta and its customers and partners.  Marqeta makes this Motion pursuant to this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Esther Chang, the Declaration of Dennis Sinclitico, the exhibits thereto, and such further argument and matters as may be offered at the time of the hearing on this Motion.

# **TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND ...................................................................................2

    A.   The Eastern District of New York Denied Antitrust Plaintiffs' Motion to Compel a Subpoena Seeking Similar Information from BNPL Provider Klarna .................2

    B.   Antitrust Plaintiffs Served Marqeta with a Facially Overbroad Subpoena .........................4

    C.   Marqeta Engaged in Meet and Confer with Antitrust Plaintiffs, But Antitrust Plaintiffs Have Refused to Meaningfully Narrow Their Request .........................4

    D.   Marqeta Will Produce Data on Network Fees and Interchange Fees Relating to BNPL Providers, As Well As BNPL Market Studies .........................7

    E.   This District Is the Proper Forum for This Motion, and the Motion Is Timely.................8

II.   LEGAL STANDARD ...........................................................................................9

III.   ARGUMENT ......................................................................................................10

    A.   Antitrust Plaintiffs Have Not Demonstrated That the Information Sought in Document Request No. 2, Which Implicates Highly Confidential and Commercially Sensitive Information, Is Relevant, and Thus Constitutes Undue Burden .........................10

    B.   Document Request No. 5 Would Require an Extensive Search for Potentially Responsive Documents and Would Pose an Undue Burden .........................13

    C.   The Court Should Quash Antitrust Plaintiffs' Deposition Subpoena for Failing to Comply with the Federal Rules .........................14

        1.   The Court Should Quash the Deposition Topic Analogs of the Document Requests for the Same Reasons.........................14

        2.   The Court Should Quash the Deposition Topics Seeking Testimony Available from Parties to the Underlying Antitrust Action .........................15

        3.   The Remaining Topics Are Overbroad and Fail to Comply with the Federal Rules...16

IV.  CONCLUSION...................................................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

**Cases**

3

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   300 F.R.D. 406 (C.D. Cal. 2014).................................................................................15

4

*Antman v. Uber Techs., Inc.*,
   No. 3:15-cv-01175-LB, 2015 WL 7759475 (N.D. Cal. Dec. 2, 2015)..........................10

5

*Chevron Corp. v. Donziger*,
   No. 3:12-mc-80237-CRB, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ...............1, 9, 12

6

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
   163 F.R.D. 329 (N.D. Cal. 1995)..................................................................................9

7

*Dart Indus. Co. v. Westwood Chem. Co., Inc.*,
   649 F.2d 646 (9th Cir. 1980) .........................................................................................9

8

*Free Stream Media Corp. v. Alphonso Inc.*,
   2017 WL 6209309 (N.D. Cal. Dec. 8, 2017)........................................................ *passim*

9

*Geller v. Von Hagens*,
   No. C11-80269 LHK HRL, 2012 WL 1413461 (N.D. Cal. Apr. 23, 2012)...................10

10

*Genus Lifesciences Inc. v. Lannett Co.*,
   No. 18-cv-07603-WHO, 2019 WL 7313047 (N.D. Cal. 2019) ......................................15

11

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006)............................................................................11, 17

12

*Handloser v. HCL America, Inc.*,
   No. 19-cv-10242-LHK, 2020 WL 4700989 (N.D. Cal. Aug. 13, 2020) ..........................9

13

*In re Elec. Arts, Inc.*,
   298 F. App'x 568 (9th Cir. 2008) .................................................................................11

14

*Lemberg Law LLC v. Hussin*,
   No. 3:16-mc-80066- JCS, 2016 WL 3231300 (N.D. Cal. June 13, 2016)........................9

15

*Lipari v. U.S. Bancorp, N.A.*,
   No. CIVA 07-2146-CM-DJW, 2008 WL 4642618 (D. Kan. Oct. 16, 2008) ..................16

16

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*,
   967 F.2d 980 (4th Cir. 1992) ...........................................................................11, 12, 13

17

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007)..............................................................................1, 16

18

*Ow v. United States*,
   No. 17-CV-00733-SK, 2018 WL 6267839 (N.D. Cal. June 12, 2018) .........................9, 15

19

*Staples, Inc.*,
   No. 5:14-mc80095-LHK, 2014 WL 1477651 (N.D. Cal. Apr. 14, 2014) .....................1, 12

20

*Third Degree Films, Inc. v. Does 1-178*,
   No. C 12-3858 EMC (MEJ), 2012 WL 12925674 (N.D. Cal. Dec. 6, 2012)..........9, 12, 16

21

22

23

24

25

26

27

28

*United States v. Chen*,
No. 17-CR-00603-BLF, 2022 WL 2789557 (N.D. Cal. July 14, 2022) ............................................11

*United States v. Columbia Broad. Sys., Inc.*,
666 F.2d 364 (9th Cir. 1982) ....................................................................................................9, 14

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 3581171 (N.D. Cal. Aug. 18, 2017) .......................................................................11, 17

**Rules**

Fed. R. Civ. P. 45 ......................................................................................................... *passim*

Non-Party Marqeta Inc.'s Motion To Quash Subpoena
Misc. Case No. _____

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs in an antitrust case against Visa and Mastercard pending in the Eastern District of New York ("Antitrust Plaintiffs") served non-party Marqeta, Inc. with an overbroad and unduly burdensome document and deposition subpoena, seeking Marqeta's highly confidential and commercially sensitive information – information that is highly confidential and sensitive not only to Marqeta but also to Marqeta's customers and partners.  Marqeta is not a party to, nor is it otherwise involved in, the underlying antitrust litigation.

Antitrust Plaintiffs have refused to meaningfully narrow the scope of their requests and have instead insisted on unyielding compliance with their unduly burdensome subpoena.  The requests are unbounded by time and seek a broad swath of Marqeta's agreements with its various partners and customers since the inception of the company.  They also seek commercially sensitive pricing and financial information at the core of Marqeta's business.  When asked for the relevance of sought-after information to the underlying case, Antitrust Plaintiffs have repeatedly refused to do so and have instead demanded that Marqeta, a non-party, explain why it would be burdensome to produce the requested information.  That is not the touchstone.  A party issuing a subpoena to a non-party "must demonstrate the discovery sought is relevant."  *Chevron Corp. v. Donziger*, No. 3:12-mc-80237-CRB, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013); *see also Optimize Tech. Sols, LLC v. Staples, Inc.*, No. 5:14-mc80095-LHK, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) ("The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.").  Antitrust Plaintiffs have not done so.  If the discovery is not relevant, it necessarily imposes an undue burden on non-parties.

In addition to requesting documents, Antitrust Plaintiffs demand that non-party Marqeta produce a corporate witness to testify on 15 wide-ranging topics, covering everything from the various agreements that Marqeta has entered into, its strategy for pricing, its organizational structure, its partnerships and joint ventures, and its negotiations, transactions, and agreements with Visa and Mastercard.  As to the last, that is information that is available from Visa or Mastercard, who are defendants in the underlying litigation.  Where, as here, information is available from parties to the litigation, "[t]here is simply no reason to burden nonparties."  *Nidec Corp. v. Victor Co. of Japan*,

1

249 F.R.D. 575, 577 (N.D. Cal. 2007).  Antitrust Plaintiffs refuse to narrow the scope of any of the 15 expansive deposition topics, much less withdraw any of them.  Nor has it agreed to apply a time limitation to the deposition.

Antitrust Plaintiffs' stated interest behind the subpoena is Buy Now Pay Later ("BNPL") providers, such as Klarna, which are Marqeta's customers and, despite not being parties to the underlying antitrust action, the real target of Antitrust Plaintiffs' interest.  Antitrust Plaintiffs have already sought expansive third-party discovery from BNPL provider Klarna in the Eastern District of New York – the very court that is hearing the underlying antitrust action and is most familiar with the relevance of discovery relating to BNPL providers.  That court denied all the discovery requested by Antitrust Plaintiffs in their motion to compel the subpoena to Klarna, except for categories of documents that Klarna had voluntarily agreed to produce.  Having failed in their attempt to obtain documents relating to BNPL products and services directly from a BNPL provider, Antitrust Plaintiffs now hope to take a second run at getting this information by serving Marqeta with a subpoena.  The Court here, like the court hearing the underlying antitrust action, should deny Antitrust Plaintiffs this discovery and quash the subpoena.

## I.      FACTUAL BACKGROUND

### A.      The Eastern District of New York Denied Antitrust Plaintiffs' Motion to Compel a Subpoena Seeking Similar Information from BNPL Provider Klarna

Antitrust Plaintiffs were previously denied the same type of discovery that it seeks here against Marqeta.  Antitrust Plaintiffs served a subpoena on BNPL provider Klarna in connection with their antitrust case against Visa and Mastercard, pending in the District Court for the Eastern District of New York, *GrubHub Holdings, Inc., et al. v. Visa Inc., et al.*, Case No. 1:19-cv-06555-MKB-VMS (E.D.N.Y.).  This case is one of several related cases, with the lead case captioned *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720-MKB-VMS (E.D.N.Y.).  There, Antitrust Plaintiffs have "sued Visa and Mastercard for promulgating rules – agreed to by member credit-card issuing banks and followed by merchants – that allegedly eliminate competition between the issuers and give them and the networks 'market power,' causing merchants to pay excessive interchange and network fees."  (Ex. 1, at 1.)  One of the issues in the case is whether

2

BNPL providers like Klarna, "offer[] a competing service that allows consumers to defer payment for their purchases without a credit card." (*Id.*)

Klarna attempted to narrow the scope of the subpoena.  When negotiations failed, Antitrust Plaintiffs filed a motion to compel in the Eastern District of New York – in the court that is hearing the underlying antitrust action and is most familiar with the relevance of BNPL discovery, and also where the subpoena specified compliance.  (Ex. 2.)  Other than documents that non-party Klarna had ***voluntarily*** agreed to produce, the court denied Antitrust Plaintiffs' motion to compel.[1]  (Ex. 3.)  It held that:

- Antitrust Plaintiffs had failed to "articulate a specific request for relevant information that would only be in the possession of Klarna," making "the burden . . . too great on a non-party and the relevance too speculative" (*id.* at RFP Nos. 1, 3);

- Antitrust Plaintiffs had "not explained why such documents [were] sufficiently necessary and relevant to place a burden to locate and produce such documents on a non-party" (*id.* at RFP Nos. 2, 4);

- Certain "discovery should be sought from a party to this action" and Antitrust Plaintiffs "should first seek the discovery from [defendants] as opposed to placing the burden on a non-party" (*id.* at RFP Nos. 5-9); and

- Antitrust Plaintiffs had "failed to justify why Klarna's internal financial information [was] relevant" (*id.* at RFP Nos. 10-11).

As to the final holding, the court further held that Antitrust Plaintiffs had "not explained how internal, financial documents, that by their nature reveal only a snapshot in time of Klarna's financial position, could be relevant to a determination that Klarna is not strong enough to compete against Mastercard so as to justify the burden of discovery on a non-party." (*Id.*)  Having failed to obtain BNPL discovery from the BNPL provider itself and from the very court hearing the underlying antitrust

---

[1] With respect to Document Request Nos. 2 and 4, Klarna had voluntarily agreed to produce its agreement with Sutton Bank.  Klarna subsequently realized it did not have an agreement with Sutton Bank, but did have one with Marqeta.  In lieu of the agreement with Sutton Bank, the court ordered Klarna to produce the agreement with Marqeta.  (Ex. 3.)

3

action, Antitrust Plaintiffs now seek to get that discovery in this District from Marqeta, which services BNPL providers.

### B.      Antitrust Plaintiffs Served Marqeta with a Facially Overbroad Subpoena

On June 16, 2022, Antitrust Plaintiffs served non-party Marqeta with a subpoena seeking highly sensitive, confidential, competitive, trade secret information, belonging to both Marqeta and its customers and partners.  (Ex. 4.)  The subpoena is far from narrowly tailored and in effect seeks all documents that are of interest to Antitrust Plaintiffs relating to BNPL providers, but goes well beyond BNPL providers and seeks, for example, Marqeta's agreements with all its joint venture partners.  (*Id.*)  In addition to seeking highly confidential and commercially sensitive documents, the subpoena also seeks a deposition of a corporate witness from Marqeta, encompassing 15 wide-ranging topics.  (*Id.*)

The same day, Visa, Inc., defendant in the underlying case, served Marqeta with a copycat deposition subpoena, covering the same deposition topics as that of Antitrust Plaintiffs.  (Ex. 7.)  Visa's counsel has stated that Visa served its subpoena simply to preserve its right to attend the deposition and ask questions.  (Declaration of Esther Chang ("Chang Decl.") ¶ 10.)

### C.      Marqeta Engaged in Meet and Confer with Antitrust Plaintiffs, But Antitrust Plaintiffs Have Refused to Meaningfully Narrow Their Request

On July 6, 2022, Marqeta began corresponding with Antitrust Plaintiffs regarding the document and deposition subpoena.  (*Id.* ¶ 5; Ex. 5.)  On July 13, Marqeta met with Antitrust Plaintiffs in an attempt to understand the scope of information requested and narrow the request.  (*Id.* ¶ 6.)  At the meet and confer, Antitrust Plaintiffs stated that they believed its request was narrowly tailored and refused to further narrow or limit the scope of the subpoena, even as to information that it could obtain from Visa and Mastercard.  (*Id.* ¶¶ 6-7.)  Given their position that the subpoena could not be further narrowed, Marqeta offered to provide a proposal for narrowing the document requests and deposition topics.  (*Id.* ¶ 7.)  It did so on July 19.  (*Id.*; Ex. 5.)

To their credit, Antitrust Plaintiffs agreed to two of Marqeta's proposals to narrow the scope of the subpoena:  (1) Antitrust Plaintiffs agreed to withdraw their request for Marqeta's agreements with Klarna, given that they had already received those documents from Klarna and (2) Antitrust Plaintiffs

1  agreed to aggregated numbers for Document Request No. 1, rather than requiring a breakout by BNPL

2  entity.  (Chang Decl. ¶ 8; Ex. 6.)

3          But Antitrust Plaintiffs refused the lion's share of Marqeta's proposals:

4          ***Information available from parties to the litigation***.  Notably, Antitrust Plaintiffs refused to

5  withdraw requests relating to information that it could obtain from Visa or Mastercard – defendants in

6  the underlying litigation.  (Chang Decl. ¶ 7.)  For example, Deposition Topic No. 6 seeks a corporate

7  witness from Marqeta to testify as to:  "The terms of any incentive agreements you have ***with Visa or***

8  ***Mastercard***."  (Ex. 4 (emphasis added).)  Antitrust Plaintiffs maintain their insistence on requiring

9  non-party Marqeta to produce a witness on this topic, even though Visa and Mastercard can provide

10  testimony on the terms.  (Chang Decl. ¶ 9.)  Similarly, Deposition Topic Nos. 8-12 seek information

11  relating to negotiations, transactions, and agreements with Visa and Mastercard.  (Ex. 4.)

12          Further, when Marqeta asked Antitrust Plaintiffs to obtain information from defendants in the

13  underlying action that would help identify responsive documents for Document Request No. 3,

14  Antitrust Plaintiffs responded:

15              [W]e disagree that the Grubhub plaintiffs need to pursue discovery against
16              Visa and/or Mastercard in order to provide you with dates that either's
                representatives attended Marqeta's board meetings.  You indicated that
17              you were in communication with Visa and Mastercard's lawyers—have
                they declined to provide you with that information?
18

19  (Ex. 5 at 6.)  Rather than obtaining the information from a "more convenient, less burdensome" source,

20  i.e., Visa and Mastercard, *Free Stream Media Corp. v. Alphonso Inc.*, 2017 WL 6209309, at *3 (N.D.

21  Cal. Dec. 8, 2017), Antitrust Plaintiffs put the onus on Marqeta to search for the information necessary

22  to respond to the Document Request.

23          ***Failure to explain relevance of requested information***.  Throughout the meet-and-confer

24  process, Antitrust Plaintiffs flipped the burdens as between the two:  When asked to explain why

25  specific pieces of information were relevant and necessary, Antitrust Plaintiffs repeatedly refused to do

26  so and instead demanded that non-party Marqeta justify why it would be burdensome to provide that

27  information.

28

5

For example, when Marqeta proposed a narrowed scope for Document Request No. 5, which seeks studies or analyses regarding the BNPL market, Antitrust Plaintiffs responded with: "Would you please describe what documents you are intending to exclude from your production and/or why this request would be burdensome?" (Ex. 5 at 8.)

Similarly, Document Request No. 2d seeks agreements with Issuing Banks. (Ex. 4.) Marqeta stated that it did "not see the relevance [of the agreements with Issuing Banks] to your lawsuit" but, in an effort to cooperate, proposed that the request be limited, at minimum, to agreements with Issuing Banks relating to card issuance not processing and agreements relating to BNPL entities. (Ex. 5 at 6.) Antitrust Plaintiffs would not agree. (*Id.* at 5-6.) When Marqeta asked Antitrust Plaintiffs to "explain why Marqeta's agreements with Issuing Banks that relate to card processing are relevant' and "explain why Marqeta's agreements with Issuing Banks for which the relationship covers non-BNPL entities is relevant" (*Id.* at 6), the only response to the issue was a request to "explain why you want to exclude agreements with processing banks" and the need for "candor with respect to the burden" (*Id.* at 5-6, 8).

As yet another example, Document Request No. 2a seeks, in part, agreements with joint venture partners. (Ex.4.) During the July 13 call, Antitrust Plaintiffs had represented that it was interested in learning whether there was a joint venture with Visa or Mastercard and whether Visa or Mastercard had a large investment in Marqeta. (Chang Decl. ¶ 6.) (Marqeta notes that that information is available from Visa and Mastercard and is properly obtained from those defendants in the underlying action.) When Marqeta proposed that the request be limited to joint venture information relating to Visa or Mastercard, Antitrust Plaintiffs refused and instead asked Marqeta to explain why it would be a burden to produce all joint venture information:

> We are interested, and entitled to discovery on, ***any joint venture*** in which Marqeta is providing payment cards to entities that merchants must accept under Visa's and Mastercard's Honor All Cards rules. Marqeta's business model, as its securities filings disclose, is premised on issuing cards that merchants must accept to entities that do not have direct relationships with merchants. Such entities include BNPL entities, ***but are not necessarily limited to them. Candor with respect to the burden and concerns regarding disclosures of JV partners on Marqeta's part is necessary*** if we are to resolve this issue.

(Ex. 5 at 5-6 (emphasis added).)  Rather than explaining why "any joint venture" entered into by Marqeta was relevant to an antitrust case against Visa and Mastercard, Antitrust Plaintiffs instead made a characterization of Marqeta's business based on its securities filings and implied that if they were "interested" in a topic, then they were "entitled to discovery" from a non-party on that issue, regardless of any established need or relevance to the case.  (*Id.*)

*Time scope*.  Marqeta also asked Antitrust Plaintiffs to narrow the time period covered by the document and deposition subpoena.  (Chang Decl. ¶ 6.)  But Antitrust Plaintiffs demanded production of all information from the inception of the underlying case, which was filed in 2004, and refused to apply a further time period limitation.  (*Id.*)  By seeking information since January 1, 2004, Antitrust Plaintiffs ask Marqeta to search and produce all responsive information in Marqeta's 12-year existence.

On July 27, Marqeta and Antitrust Plaintiffs met and conferred again, but were unable to resolve the present dispute.  (*Id.* ¶ 9.)

> **D.     Marqeta Will Produce Data on Network Fees and Interchange Fees Relating to BNPL Providers, As Well As BNPL Market Studies**

Despite questioning the relevance of the documents, in an effort to cooperate and respond in good faith, Marqeta has agreed to produce certain categories of documents.  First, Marqeta will produce aggregated data (not broken out by BNPL entity) for Document Request Nos. 1a-1c.  (*Id.* ¶ 9; Ex. 6.) Marqeta will also indicate the number of BNPL entities to which the data relates, but objects to identifying the specific BNPL entities to which the data relates.  (*Id.*)  Second, Marqeta will produce formal third-party reports analyzing the BNPL market in its possession, custody, or control that can be located after a reasonably diligent search.  (*Id.*)  Third, although Marqeta was willing to produce aggregated data in response to Document Request No. 4, Antitrust Plaintiffs have withdrawn that request.  (*Id.*)  Finally, with respect to Document Request No. 3, after a reasonable investigation, Marqeta states that there are no responsive documents.  (*Id.*)

7

| Document Request | Subject Matter | Production |
|---|---|---|
| 1 | Documents sufficient to show the annual dollar volume of Credit Card, Debit Card, or Virtual Card transactions for BNPL entities You acquire, process, or issue, separately for each BNPL entity, and for each the annual amounts of:<br><br>a. Network Fees generated, including service fees, data processing fees, and international fees;<br><br>b. Interchange Fees generated; and<br><br>c. Discounts, concessions or incentives on any such costs or fees given to You or to any BNPL entity. | By agreement between Marqeta and Antitrust Plaintiffs, Marqeta will produce aggregated data (not broken out by BNPL entity).<br><br>Marqeta will also indicate the number of BNPL entities to which the data relates, but objects to identifying the specific BNPL entities to which the data relates. |
| 2 | Your agreements with:<br><br>a. Acquiring Banks and/or Processors, including joint venture partners;<br><br>b. BNPL providers including but not limited to Affirm and Klama;<br><br>c. Sutton Bank, Bancorp, CNB-Enid, Republic Bank, MetaBank, and Axiom; and<br><br>d. Issuing Banks. | Antitrust Plaintiffs have withdrawn their request for No. 2b with regard to Klarna. |
| 3 | Minutes of Your Board meetings where a representative of Visa or Mastercard attended. | Marqeta has no responsive documents. |
| 4 | Documents sufficient to show fraud rates on each type of Payment Card product, and on BNPL products, that You acquire, process, or issue, including fraud and non-fraud related chargeback volumes. | Antitrust Plaintiffs have withdrawn this request. |
| 5 | Documents sufficient to show any studies or analyses done by or for You regarding the adoption and use of BNPL products by consumers and Merchants. | Marqeta will produce formal third-party reports analyzing the BNPL market in its possession, custody, or control that can be located after a reasonably diligent search. |

### E.      This District Is the Proper Forum for This Motion, and the Motion Is Timely

Antitrust Plaintiffs' subpoena specified San Francisco as the place of compliance.  Accordingly, this District is the proper forum for the instant Motion.  Fed. R. Civ. P. 45(d)(3)(A) (providing that proper forum for motion to quash is district where compliance is required).

8

Marqeta and Antitrust Plaintiffs met and conferred in good faith, but were unable to resolve their dispute.  The date of compliance on the face of the subpoena is July 28, 2022.  (Ex. 4, at 3.)  Accordingly, Marqeta was forced to file this Motion to Quash.  A motion to quash a third-party subpoena "is timely if made before the date specified for compliance with the subpoena."  *Handloser v. HCL America, Inc.*, No. 19-cv-10242-LHK, 2020 WL 4700989, at *4 (N.D. Cal. Aug. 13, 2020) ("Courts generally agree that a motion to quash under Rule 45 is timely if made before the date specified for compliance with the subpoena.").

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3)(A)(iv) requires courts to quash subpoenas that impose an undue burden.  *Ow v. United States*, No. 17-CV-00733-SK, 2018 WL 6267839, at *1 (N.D. Cal. June 12, 2018); *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995).  This is particularly true when the target of the subpoena is a non-party.  *Dart Indus. Co. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980).

In determining whether there is undue burden, courts typically "balance[] the burden on the recipient of the subpoena, the relevance of the information sought to the claims or defenses at issue in the lawsuit, the scope or breadth of the discovery request, and the party's need for the information."  *Third Degree Films, Inc. v. Does 1-178*, No. C 12-3858 EMC (MEJ), 2012 WL 12925674, at *2 (N.D. Cal. Dec. 6, 2012).  The undue burden test also requires that the Court be "generally sensitive to the costs imposed on third-parties."  *Id.*

"The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts."  *Lemberg Law LLC v. Hussin*, No. 3:16-mc-80066- JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016); *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371-72 (9th Cir.  1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.").  Courts in this district have consequently held that "[o]n a motion to quash a subpoena, the moving party has the burden of persuasion . . . , but the party issuing the subpoena must demonstrate the discovery sought is relevant."  *Chevron*, 2013 WL 4536808, at *4.

## III.    ARGUMENT

Where, as here, an issuing party has not established that the documents sought are relevant, the subpoena is overly broad and seeks documents that can be obtained from parties to the underlying litigation, and the time period is expansive, the subpoena is "unduly burdensome" and should be quashed. *Geller v. Von Hagens*, No. C11-80269 LHK HRL, 2012 WL 1413461, at *3 (N.D. Cal. Apr. 23, 2012); *see also Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175-LB, 2015 WL 7759475, at *3 (N.D. Cal. Dec. 2, 2015).

As a threshold matter, the subpoena here is overbroad because it is unlimited in time. Despite Marqeta's request that Antitrust Plaintiffs limit the time period requested by the discovery, Antitrust Plaintiffs insist on all responsive information since 2004, covering the entire 12-year period of Marqeta's history. *Geller*, 2012 WL 1413461, at *4 (weighing time period factor in favor of quashing subpoena where "the time period covered by the subpoena is quite long – approximately five years"); *Free Stream Media*, 2017 WL 6209309, at *5 (quashing subpoena unlimited in time). In addition, as further detailed below, the document requests and deposition topics are overbroad because they: (1) seeking documents that Antitrust Plaintiffs should obtain from the defendants in the underlying antitrust action; (2) seek documents for which Antitrust Plaintiffs have not established relevance; and (3) seek access to highly confidential (and irrelevant) information, which is commercially sensitive to both Marqeta and its customers and partners.

### A.    Antitrust Plaintiffs Have Not Demonstrated That the Information Sought in Document Request No. 2, Which Implicates Highly Confidential and Commercially Sensitive Information, Is Relevant, and Thus Constitutes Undue Burden

Antitrust Plaintiffs have not demonstrated the "substantial need" required to justify their expansive request for highly confidential and commercially sensitive agreements between Marqeta and its customers and partners. Document Request No. 2 asks for – without limitation – all of Marqeta's agreements with Acquiring Banks and joint venture partners, all its agreements with BNPL providers, and all its agreements with Issuing Banks, regardless of whether the relationship relates to card issuance or processing. (Ex. 4.) Marqeta's agreements with its customers and partners include highly confidential and commercially sensitive pricing information to which competitors (as well as other

10

customers and partners) are not privy.  (Sinclitico Decl. ¶ 2);  *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (holding that pricing terms, royalty rates, and guaranteed minimum payment terms found in licensing agreement "is also information that plainly falls within the definition of 'trade secrets'"); *see also United States v. Chen*, No. 17-CR-00603-BLF, 2022 WL 2789557, at *2 (N.D. Cal. July 14, 2022) (finding "compelling reasons to seal documents containing proprietary business information, including pricing and other negotiated terms, especially in agreements with customers"). These agreements contain confidentiality provisions and restrict disclosure of the terms of the agreement, with terms being designated the confidential information of the parties.[2]  (*Id.* ¶ 3.)

Rule 45 "provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006).  To obtain "trade secret or other confidential research, development, or commercial information" from a non-party, a subpoenaing party must demonstrate "substantial need" for the information "that cannot be otherwise met without undue hardship."  Fed. R. Civ. P. 45 (d)(3)(C)(i); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 3581171, *1 (N.D. Cal. Aug. 18, 2017) (holding that requesting party must demonstrate substantial need for trade secret or confidential commercial information).  Determining "substantial need" requires taking into account the relevance and importance of the material sought, as well as the availability of facts from other sources.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 985 (4th Cir. 1992).

Here, Antitrust Plaintiffs have not demonstrated the relevance or need for these agreements, much less a "substantial need."  Moreover, to the extent that they are relevant at all, the documents are also available from other sources.  (Ex. [6/2/2022 Order], at RFP Nos. 1, 3 (court in underlying antitrust action holding that Antitrust Plaintiffs had failed to "articulate a specific request for relevant information that would ***only be in the possession of Klarna*,**" making "the burden . . . too great on a non-party and the relevance too speculative")); *Free Stream Media*, 2017 WL 6209309, at *3 ("Additionally, a court must limit . . . discovery [if it is] duplicative, or can be obtained from some

---

[2] To the extent that the Court orders production of these highly confidential and commercially sensitive agreements, Marqeta would need to abide by the notice provisions in the agreements and notify each customer or partner whose agreement is implicated.  (Sinclitico Decl. ¶ 3.)

other source that is more convenient, less burdensome, or less expensive."). Courts have liberal discretion to quash a subpoena that seeks disclosure of such information, and this Court should do so here. Fed. R. Civ. P. 45(d)(3)(B).

*Document Request No. 2a*. Antitrust Plaintiffs have also failed to explain why Marqeta's agreements with Acquiring Banks and Processors, given that Marqeta's role as a program manager for BNPL providers is to facilitate the relationship between the ***Issuing Bank*** and the BNPL provider. In fact, when asked to explain the relevance, counsel for Antitrust Plaintiffs had no response. (Chang Decl. ¶ 9.) Rather, they asked for an explanation as to how card processing works for BNPL entities and what role Acquiring Banks play vis-à-vis Marqeta's relationship with BNPL providers. (*Id.*) Third-party discovery is not intended to be a fishing expedition, nor should it obligate non-parties to educate litigants and their counsel about fundamental aspects of a non-party's industry. Rather, issuing parties must propound targeted requests for information that is relevant and for which there a demonstrated need. *Optimize*, 2014 WL 1477651, at *2 ("The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.").

Further, Antitrust Plaintiffs have failed to explain why ***all*** of Marqeta's agreements with its joint venture partners are relevant when their stated interest was whether Marqeta had a joint venture with Visa or Mastercard. Rather than providing a reasoned basis for needing such wide-ranging discovery from Marqeta regarding any joint ventures, which is a broad and vague term, Antitrust Plaintiffs placed the onus on Marqeta to explain why it would be a burden to produce all these agreements and implied that its "interest" in these relationships "entitled" them to this discovery. (*See supra* Section I.C, at 6-7.) Not so. Rather, Antitrust Plaintiffs "must demonstrate the discovery sought is relevant." *Chevron*, 2013 WL 4536808, at *4. And even if relevant to some in the underlying litigation, the Court must balance the need against the burden to the non-party. *Third Degree Films*, 2012 WL 12925674, at *2.

*Document Request No. 2c, 2d*. Antitrust Plaintiffs have not demonstrated a "substantial need" for Marqeta's contracts with Issuing Banks, which they could also obtain from the Issuing Banks. *Nat'l Union Fire Ins.*, 967 F.2d at 985 (holding that determining "substantial need" requires taking into account relevance and importance of material sought, as well as availability of facts from other

sources).  Marqeta has already agreed to produce information regarding the Interchange Fees and Network Fees it retains relating to BNPL providers – the very fees that are the subject of the underlying antitrust action.

Moreover, Antitrust Plaintiffs have failed to articulate (it cannot) why Marqeta's agreements with Issuing Banks relating to *card processing* are relevant to an antitrust case involving fees for *card issuance*.  Likewise, they have not set forth a basis for needing Marqeta's agreements with Issuing Banks relating to non-BNPL entities, when the admitted focus of the subpoena is BNPL providers.

*Document Request No. 2b*.  Antitrust Plaintiffs have  already received Marqeta's agreements with one BNPL entity – Klarna.  Antitrust Plaintiffs have not demonstrated a "substantial need" for every contract with every BNPL entity that Marqeta has ever conducted business with.  Moreover, because BNPL providers are the primary target of Antitrust Plaintiffs' interest and inquiry, Antitrust Plaintiffs should seek those agreements from the BNPL providers themselves, as it did with Klarna. *Free Stream Media*, 2017 WL 6209309, at *3 ("Additionally, a court must limit . . . discovery [if it is] duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."); *Nat'l Union Fire Ins.*, 967 F.2d at 985 (holding that determining "substantial need" requires taking into account the relevance and importance of the material sought, as well as the availability of facts from other sources).  Marqeta understands from counsel for Antitrust Plaintiffs that they have served BNPL providers with subpoenas and are also seeking this discovery from them. (Chang Decl. ¶ 9.)

### B. Document Request No. 5 Would Require an Extensive Search for Potentially Responsive Documents and Would Pose an Undue Burden

As written, Document Request No. 5 seeks "show any studies or analyses done by or for You regarding the adoption and use of BNPL products by consumers and Merchants."  Although Antitrust Plaintiffs preface this request with "[d]ocuments sufficient to show," it still seeks information on all studies or analyses.  Many Marqeta employees engage in informal studies or analyses of the BNPL market.  Marqeta would need to question (likely) dozens of employees whose work may touch on Marqeta's BNPL customers in order to ascertain the universe of potential "studies or analyses" that would fall within the scope of this Request.  (Sinclitico Decl. ¶ 4.)  Despite having significant

13

reservations about the relevance of these documents, Marqeta has agreed to produce formal third-party reports that analyze the BNPL market that can be located after a reasonably diligent search. That is enough burden to impose on a non-party. If Antitrust Plaintiffs desire an analysis of the BNPL market, it can and should engage a consultant or expert to do so. That burden should not fall on Marqeta as a non-party. *Columbia Broad. Sys.*, 666 F.2d at 371-72 ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.").

**C.    The Court Should Quash Antitrust Plaintiffs' Deposition Subpoena for Failing to Comply with the Federal Rules**

Given the breadth of the topics and the undue burden it would impose on Marqeta, the deposition subpoena should be quashed in its entirety. The topics in the deposition subpoena go well beyond the document requests. In contrast to the five document requests, Antitrust Plaintiffs propounded 15 all-encompassing deposition topics, for which it demands that non-party Marqeta prepare a corporate witness to sit for deposition. The deposition topics include analogs of the five document requests. (*See* Deposition Topics 3, 5, 7, and 13-15.[3]) In addition, Antitrust Plaintiffs propounded nine additional topics, covering Marqeta's negotiations, transactions, and agreements with Visa and Mastercard, Marqeta's role as an Issuer Processor in various types of transactions (beyond BNPL transactions), Marqeta's organizational structure, and the manner in which Marqeta prices its BNPL agreements.

The 15 wide-ranging topics could not possibly be complied with by producing only one corporate representative. Marqeta believes that it would likely require, at minimum, three different witnesses to competently testify as to the topics. Such burden should not be imposed on a non-party.

**1.    The Court Should Quash the Deposition Topic Analogs of the Document Requests for the Same Reasons**

For the six deposition topics that are coextensive with the five document requests, Marqeta incorporates its arguments above regarding the document requests. (*See supra* Sections III.A-D.) (*See*

---

[3] Deposition Topics 14-15 appear to map onto Document Request 5.

14

Deposition Topics 3, 5, 7, and 13-15.)  Moreover, it would be duplicative and unduly burdensome to require Marqeta to both produce documents responsive to the document requests and a witness to testify as to those documents.  A court must limit discovery if it is duplicative or could be obtained from a more convenient or less burdensome source.  *Free Stream Media*, 2017 WL 6209309, at *3.

2. **The Court Should Quash the Deposition Topics Seeking Testimony Available from Parties to the Underlying Antitrust Action**

Deposition topics seeking testimony available from Visa and Mastercard –defendants in the underlying litigation – are improperly sought from Marqeta.  *See Ow*, 2018 WL 6267839, at *1 (granting motion to quash subpoena for documents that plaintiffs could have obtained directly from defendant); *Genus Lifesciences Inc. v. Lannett Co.*, No. 18-cv-07603-WHO, 2019 WL 7313047, at *4 (N.D. Cal. 2019) (finding subpoena to constitute undue burden where issuing party failed to seek documents from party to underlying litigation first); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410-11 (C.D. Cal. 2014) (quashing deposition subpoena where testimony sought from non-party was likely obtainable from party).  Deposition Topics 6, 8-12 on their face seek testimony that is equally available from defendants in the underlying litigation:

| Deposition Topic | Subject Matter |
| --- | --- |
| 6 | The terms of any incentive agreements you have **with Visa or Mastercard**. |
| 8 | The terms of any investments in You **by Visa or Mastercard** and any agreements reflecting the same. |
| 9 | Your ability, if any, to negotiate **with Visa or Mastercard** the Interchange Fee and Network Fees You assess on Debit Card, Credit Card, and Virtual Card transactions. |
| 10 | Any exceptions or waivers to Default Interchange Fees that you have **received from Visa or Mastercard** for the Interchange Fees You pay or have assessed on Debit Card, Credit Card, and Virtual Card transactions. |
| 11 | Any exceptions or waivers to the Network Fees that you have **received from any of the Visa or Mastercard** for the Network Fees you pay or have assessed on Debit Card, Credit Card, and Virtual Card transactions. |
| 12 | Any exceptions or waivers to the application of or adherence to the Competitive Restraints that You have **received from Visa or Mastercard**. |

15

(Ex. 4 (emphasis added).)  Visa and Mastercard were parties to the negotiations, transactions, and agreements sought in these topics and can testify to them.  Specifically, Visa and Mastercard can testify as to the terms of any incentive agreements with Visa or Mastercard (No. 6), the terms of any investments by Visa or Mastercard (No. 8), the ability to negotiate Visa or Mastercard fees (No. 9), exceptions or waivers to the Visa or Mastercard fees (Nos. 10-11), and exceptions or waivers to the Visa or Mastercard Competitive Restraints (No. 12).

"There is simply no reason to burden nonparties when the [testimony] sought are in possession of the part[ies]."  *See Nidec*, 249 F.R.D. at 577; *Free Stream Media*, 2017 WL 6209309, at *3 (finding that court must limit discovery if duplicative or could be obtained from more convenient or less burdensome source).  This is more so where the burden on the non-party would be great.  As corporate witnesses, Marqeta's witnesses cannot simply show up for their deposition.  They would need to prepare and educate themselves by reviewing documents, speaking with other employees possessing information, and meeting with attorneys.  The burden to Marqeta vastly outweighs any potential benefit to Antitrust Plaintiffs or relevance in the underlying litigation.  *Third Degree Films*, 2012 WL 12925674, at *2 (balancing need against burden to non-party).  To the extent that Marqeta may be able to provide additional nuance or perspective, that additional information is not justified by the burden it would create on a non-party to prepare its corporate witnesses for deposition and to sit for a deposition.

### 3. The Remaining Topics Are Overbroad and Fail to Comply with the Federal Rules

The remaining topics utterly fail to comply with Rule 45 and Rule 30(b)(6).  *See Lipari v. U.S. Bancorp, N.A.*, No. CIVA 07-2146-CM-DJW, 2008 WL 4642618, at *5 (D. Kan. Oct. 16, 2008) ("In order for Rule 30(b)(6) to function effectively, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.").  Rather than providing non-party Marqeta with notice of narrowly tailored topics, Antitrust Plaintiffs propounded overly broad and unduly burdensome topics:

| Deposition Topic | Subject Matter |
|---|---|
| 1 | The roles of Issuer Processors in processing Credit Card, Debit Card, Virtual Card, and BNPL transactions, and the differences among the four. |

16

| Deposition Topic | Subject Matter |
|---|---|
| 2 | Your ownership and organizational structure between 2004 and the present, including but not limited to Your participation in any joint ventures for the purpose of processing Credit Card, Debit Card, Virtual Card, or BNPL transactions. |
| 4 | The manner in which you price agreements with BNPL providers and Your operating margin on such BNPL agreements. |

For example, Deposition Topic No. 1 seeks corporate testimony on the role of Issuer Processors in general (including Issuer Processors other than Marqeta for which Marqeta does not possess knowledge) and as to the entire range of transactions that Marqeta's business touches. This topic is narrowly tailored neither to Marqeta or to the BNPL providers that Antitrust Plaintiffs allege are at issue.

Deposition Topic No. 2 seeks to compel corporate testimony on Marqeta's ownership and organizational structure from its inception, including but not limited to "any joint venture for the purpose of processing Credit Card, Debit Card, Virtual Card, or BNPL transactions." Marqeta is not a party to the underlying litigation. Its corporate structure and any joint ventures covering the range of transactions Marqeta's business touches are wide-ranging inquiries and not narrowly tailored to the issues in the underlying antitrust action involving the Interchange Fees and Network Fees that Visa and Mastercard charge.

Similarly, Deposition Topic No. 4 seeks highly confidential testimony regarding the manner and strategy in which Marqeta prices its agreements. This is highly confidential and commercially sensitive information, for which Antitrust Plaintiffs must demonstrate a "substantial need." Fed. R. Civ. P. 45 (d)(3)(C)(i); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 3581171, *1 (N.D. Cal. Aug. 18, 2017) (holding that requesting party must demonstrate substantial need for trade secret or confidential commercial information); *Gonzales, Inc.*, 234 F.R.D. at 684 (holding that Rule 45 "provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty"). Further, to the extent that pricing information is relevant to the underlying litigation, the actual pricing is indicated in the agreements with the BNPL providers, such as Klarna.

Despite Marqeta's requests to limit the scope of the deposition topics and to limit the time on the record for the deposition, Antitrust Plaintiffs have repeatedly demonstrated an unwillingness to narrow the deposition in scope or time – even as to a non-party.  The deposition subpoena is improper as a matter of law and must be quashed.  Fed. R. Civ. P. 45(a).

**IV.    CONCLUSION**

For the reasons described above, Marqeta respectfully requests that this Court quash Antitrust Plaintiffs' subpoena to Marqeta and deny the requested third-party discovery, as the Eastern District of New York did as to BNPL provider Klarna with respect to similar information sought by Antitrust Plaintiffs.

Dated:  July 27, 2022                          Respectfully submitted,

                                               THE NORTON LAW FIRM PC

                                               */s/ Esther Kim Chang*
                                               Esther Kim Chang

                                               Attorney for Non-Party Movant
                                               MARQETA, INC.