UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Subpoenas to Marqeta, Inc., in connection with:<br><br>IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>GRUBHUB HOLDINGS, INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>VISA INC., et al,<br><br>        Defendants. | Case No. 22-mc-80187-TSH<br><br>Underlying litigation: E.D.N.Y. Case Nos. 1:19-cv-06555 and 1:05-md-01720<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 1 |

Marqeta, Inc., moves to quash subpoenas served on it by Plaintiffs ("Antitrust Plaintiffs") and Defendant Visa, Inc., in connection with an antitrust case pending in the United States District Court for the Eastern District of New York, captioned *GrubHub Holdings, Inc., et al. v. Visa Inc., et al.*, Case No. 1:19-cv-06555 (E.D.N.Y.). It is one of several related cases, with the lead case captioned *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720 (E.D.N.Y.). Marqeta is not a party to the New York litigation. The Court held a hearing on August 18, 2022 and now issues the following order.

**A.     Background**

    **1.     The New York Litigation**

In the underlying litigation, Antitrust Plaintiffs have sued Visa and Mastercard for promulgating rules – agreed to by member credit-card issuing banks and followed by merchants – that allegedly eliminate competition between the issuers and give them and the networks market power, causing merchants to pay excessive interchange and network fees. One of the issues in the

litigation is whether Buy Now Pay Later ("BNPL") providers offer a competing service that allows consumers to defer payment for their purchases without a credit card. Marqeta's customers are BNPL providers.

According to Antitrust Plaintiffs, some BNPL companies that are associated with Marqeta allow their customers to pay for purchases at merchants using a virtual Visa-branded payment card. Marqeta has entered into relationships with Visa and Mastercard to offer these BNPL products, and to issue Visa-branded virtual payment cards in the United States. Marqeta acts as an issuer-processor for Visa-branded payment cards for entities, including BNPL companies such as Klarna and Affirm, that allow BNPL customers to make purchases at merchants. Merchants are required to accept these virtual payment cards, even if a merchant has chosen not to do business with a BNPL Company, because Marqeta's virtual cards are subject to Visa's and Mastercard's Honor All Cards rules. Marqeta collects the fees from merchants – fees that would normally be paid to the bank issuing the card – and pays the issuing bank a commission. Further, Marqeta's customer contracts typically include provisions under which it shares a portion of the interchange fees with its customers.

**2.     The Subpoenas**

Antitrust Plaintiffs' subpoena contains five requests for production ("RFPs") that seek:

> 1. Documents sufficient to show the annual dollar volume of Credit Card, Debit Card, or Virtual Card transactions for BNPL entities You acquire, process, or issue, separately for each BNPL entity, and for each the annual amounts of:
>
>> a. Network Fees generated, including service fees, data processing fees, and international fees;
>>
>> b. Interchange Fees generated; and
>>
>> c. Discounts, concessions or incentives on any such costs or fees given to You or to any BNPL entity.
>
> 2. Your agreements with:
>
>> a. Acquiring Banks and/or Processors, including joint venture partners;
>>
>> b. BNPL providers including but not limited to Affirm and Klarna;

      c. Sutton Bank, Bancorp, CNB-Enid, Republic Bank, MetaBank, and Axiom; and

      d. Issuing Banks.

3. Minutes of Your Board meetings where a representative of Visa or Mastercard attended.

4. Documents sufficient to show fraud rates on each type of Payment Card product, and on BNPL products, that You acquire, process, or issue, including fraud and non-fraud related chargeback volumes.

5. Documents sufficient to show any studies or analyses done by or for You regarding the adoption and use of BNPL products by consumers and Merchants.

The subpoena also seeks a Rule 30(b)(6) deposition on the following topics:

1. The roles of Issuer Processors in processing Credit Card, Debit Card, Virtual Card, and BNPL transactions, and the differences among the four.

2. Your ownership and organizational structure between 2004 and the present, including but not limited to Your participation in any joint ventures for the purpose of processing Credit Card, Debit Card, Virtual Card, or BNPL transactions.

3. Your annual dollar volume of Credit Card, Debit Card, or Virtual Card transactions for BNPL entities, You acquire, process, or issue, separately for each BNPL entity, and for each the annual amounts of:

      a. Network Fees generated, including service fees, data processing fees, and international fees;

      b. Interchange Fees generated; and

      c. Discounts, concessions or incentives on any such costs or fees given to You or any BNPL entity.

4. The manner in which you price agreements with BNPL providers and Your operating margin on such BNPL agreements.

5. Your agreements with:

      a. Acquiring Banks and/or Processors, including joint venture partners;

      b. BNPL providers including but not limited to Affirm and Klarna;

      c. Sutton Bank, Bancorp, CNB-Enid, Republic Bank, MetaBank, and Axiom;

      d. Issuing Banks; and

    e. Visa or Mastercard.

 6. The terms of any incentive agreements you have with Visa or Mastercard.

 7. Minutes of Your Board meetings where a representative of Visa or Mastercard attended.

 8. The terms of any investments in You by Visa or Mastercard and any agreements reflecting the same.

 9. Your ability, if any, to negotiate with Visa or Mastercard the Interchange Fee and Network Fees You assess on Debit Card, Credit Card, and Virtual Card transactions.

 10. Any exceptions or waivers to Default Interchange Fees that you have received from Visa or Mastercard for the Interchange Fees You pay or have assessed on Debit Card, Credit Card, and Virtual Card transactions.

 11. Any exceptions or waivers to the Network Fees that you have received from any of the Visa or Mastercard for the Network Fees you pay or have assessed on Debit Card, Credit Card, and Virtual Card transactions.

 12. Any exceptions or waivers to the application of or adherence to the Competitive Restraints that You have received from Visa or Mastercard.

 13. Fraud rates on each type of Payment Card product, and on BNPL products, that You acquire, process, or issue, including fraud and non-fraud related chargeback volumes.

 14. Any studies or analyses done by or for You regarding the economics of offering BNPL products to consumers and Merchants.

 15. Any studies or analyses done by or for You regarding the adoption and use of BNPL products by consumers and Merchants.

Visa served Marqeta with a copycat deposition subpoena to preserve its right to attend the deposition and ask questions.

**3. Meet and Confer**

During meet and confer, the parties narrowed their dispute as to the RFPs. Marqeta agreed to provide certain categories of documents, summarized in a chart on page 8 of its motion to quash. Specifically, Marqeta agreed to provide aggregated data (not broken out by BNPL entity) for RFPs 1(a), 1(b) and 1(c). Marqeta will also indicate the number of BNPL entities to which that data relate. For RFP 5, Marqeta agreed to produce formal third-party reports analyzing the

4

1    BNPL market in its possession, custody or control that can be located after a reasonably diligent

2    search. For RFP 3, Marqeta states that it has no responsive documents. Antitrust Plaintiffs have

3    withdrawn RFP 2(b) as it relates to Klarna, have withdrawn RFP 4 entirely, have accepted

4    Marqeta's representation that it has nothing responsive to RFP 3, and have accepted its proposal as

5    to RFP 5. Thus, as to the RFPs, the remaining issues in dispute are whether Marqeta will identify

6    the BNPL providers associated with the data produced for RFP 1, and whether Marqeta will

7    produce documents responsive to RFP 2 other than item 2(b) as to Klarna.

8    As to deposition topics, Antitrust Plaintiffs have withdrawn topic 13, but the other 14

9    remain in dispute.

**B.   Analysis[1]**

   **1.   RFP 1**

For RFP 1, Antitrust Plaintiffs have a specific theory of relevance. They explain that "[t]he identities are needed to allow the [] Plaintiffs to determine which 'BNPL' transactions are, in reality, transactions on Visa and Mastercard-branded cards." ECF No. 4 at 12. "That analysis is crucial," they explain, "because it will distinguish between the percentage of BNPL transactions that represent a new form of payment that purportedly competes with Visa and Mastercard, and the percentage that represent yet another manner in which Visa and Mastercard continue to control and dominate payment card transactions." *Id*.; *see also id*. at 14. In other words, they say this information is relevant to market definition. However, in reply Marqeta submitted the declaration of Dennis Sinclitico, which states in paragraph 2 that "Marqeta acts as Issuer Processor and/or program manager for several Buy Now Pay Later ('BNPL') providers in the United States. *All these transactions occur on Visa and Mastercard-branded cards*." ECF No. 9-5 (emphasis added). Thus, the purported need for the identities of the BNPL providers seems to have evaporated, as the

---

[1] In a footnote on page 11 of their opposition brief, Antitrust Plaintiffs state that Marqeta waived its objections to the RFPs by failing to serve objections within 14 days of being served with the subpoenas. However, Antitrust Plaintiffs' commendable efforts to narrow the disputes over the RFPs during meet and confer are inconsistent with the view that Marqeta had forfeited all objections, and relegating the waiver argument to a single footnote in an 18-page brief whose main text is entirely about the merits of the discovery issues does not count as pressing the point. Accordingly, the Court finds that Antitrust Plaintiffs have waived the waiver argument.

5

aggregated data that Marqeta has agreed to produce will all relate to card-based transactions.

At the hearing Antitrust Plaintiffs offered a new theory of relevance for this information. They say that (1) Marqeta is the exclusive vehicle by which its BNPL customers can engage in carded transactions, such that all transactions these customers engage in that are not associated with Marqeta are non-carded; (2) through publicly available information they can discover the total volume of transactions each BNPL provider engages in; and therefore (3) if they obtain the Marqeta data broken by BNPL provider, then through simple division they can determine for each BNPL provider what percentage of its transactions are carded vs. non-carded. In other words, Antitrust Plaintiffs' written briefing argued that the requested information would show what fraction of Marqeta's business is in competition with Visa and Mastercard, and when that argument fell apart, they shifted to contending that the requested data could be used inferentially to determine the size of the non-Marqeta BNPL market, which they assert would all be in competition with Visa and Mastercard. Presumably, if the non-Marqeta share of the BNPL market is small, Antitrust Plaintiffs would argue that the BNPL market does not present meaningful competition with Visa and Mastercard.

However, there is no evidence before the Court that premises (1) and (2) are true. If Marqeta is not the exclusive vehicle for BNPL providers to provide a Visa or Mastercard-branded card, then comparing Marqeta to non-Marqeta BNPL transactions won't reveal anything. Nor have Antitrust Plaintiffs demonstrated that the total volume of BNPL transactions broken down by BNPL provider is available to them. These were just assertions by counsel, substantiated by nothing. The Court understands that this is a discovery motion, not a motion for summary judgment, and a litigant does not have to prove its claim on the merits in order to get discovery. However, this new theory of relevance presents a problem that is very much relevant to discovery, especially discovery sought from a non-party: it is plainly aimed at obtaining information that Marqeta doesn't have, i.e., the percentage of its customers' transactions that are *not* associated with Visa or Mastercard. It is also clear who does have that information: the BNPL providers. It would be an undue burden on Marqeta to force it to disclose confidential business information so that Antitrust Plaintiffs could try to make a backdoor guess about what they really want to know,

driven by a market assumption they have not shown is true, when they have failed to obtain that information from the companies that actually have it.

### 2. RFP 2 and the Deposition Topics

For RFP 2 and for all of the deposition topics, Antitrust Plaintiffs do not offer a specific theory of relevance tied to the request or topic. Rather, they argue in a general sort of way that Marqeta is hip-deep in the payment card industry and is consciously using the Visa and Mastercard rules that are challenged in the underlying case to further its own business interests and profits. They say its role in the payment card industry is relevant to the litigation in several broad ways.

First, Antitrust Plaintiffs challenge a number of competitive restraints imposed by Visa and Mastercard on merchants as violations of federal antitrust law. Among those restraints are Visa's and Mastercard's Honor All Cards rules, which require merchants to accept all Visa credit or debit cards or all Mastercard credit or debit cards if the merchant wants to accept any credit or debit card, respectively, with those brands. Thus, if a merchant wants to accept a relatively low-priced regulated Visa debit card, it must also accept high-priced unregulated Visa commercial debit cards. As it relates to Marqeta, these Honor All Cards rules require merchants to accept the high-priced cards Marqeta provides to BNPL companies, regardless of whether the merchant wants to do business with that company.

Second, Antitrust Plaintiffs also challenge Visa's and Mastercard's setting of the fees (i.e., interchange fees) that merchants must pay for the acceptance of credit and debit cards, as an unlawful price restraint under federal antitrust laws. They say that Marqeta's SEC filings make it clear that it is paid and profits from these fees and, in fact, specifically works only with banks that are exempt from the caps on interchange fees that can be charged to merchants under federal law in the form of the Durbin Amendment (which caps debit card fees for regulated banks, but not exempt banks). In addition, and supposedly in contrast to the justifications for interchange fees that Visa and Mastercard have asserted – that such fees are needed to allow issuing banks to cover the cost of transactions and provide benefits to cardholders – Marqeta (even though it is not a bank and does not have cardholders) is paid the interchange fees merchants are charged in transactions

7

on its virtual cards.

Third, Antitrust Plaintiffs say that at trial they must prove a relevant market, and the participants therein. They say that despite numerous rulings in past cases that credit and debit payment cards are distinct antitrust markets, Visa and Mastercard have taken the position that BNPL companies compete in one or both of these markets. And they claim that Marqeta, which sits in the middle of the relationship between Visa, Mastercard, issuing banks, and BNPL companies using its virtual cards, thus has information directly relevant to the question of whether BNPL companies are really competitors of Visa and Mastercard, or allies.

Before comparing these theories of relevance to RFP 2 and the deposition topics, the Court makes some preliminary observations. First, the Court thinks the third general theory of relevance has been wiped out by the Sinclitico declaration. Because all of the BNPL transactions at issue occur on Visa or Mastercard-branded cards, none of them are alternatives to Visa or Mastercard. Stated another way, the Sinclitico declaration is itself evidence sufficient to answer the question Antitrust Plaintiffs are trying to explore. There is no point in ordering Marqeta to produce documents showing which of its BNPL customers are true alternatives to Visa or Mastercard, or to provide a witness to testify about that, when its in-house counsel has provided a sworn declaration that none of them are. Moreover, to the extent Antitrust Plaintiffs are now trying to justify this discovery by relying on the new theory of relevance offered above in connection with RFP 1 (that Marqeta's information might allow Antitrust Plaintiffs to infer the size of the non-Marqeta BNPL market, which they think is all competition with Visa and Mastercard), for the reasons explained above, the Court does not believe that this uncertain attempt to deduce something that Marqeta doesn't know warrants discovery of Marqeta's confidential information when Antitrust Plaintiffs have failed to obtain it from the BNPL providers who actually have it.

Second, the Court thinks that RFP 2 seeks "confidential . . . commercial information" within the meaning of Federal Rule of Civil Procedure 45(d)(3)(B)(i). That RFP seeks Marqeta's agreements with all acquiring banks, processing banks, issuing banks, joint venture partners, BNPL customers, and six specifically identified banks. Marqeta has submitted a declaration stating that these agreements "include commercially sensitive pricing terms, fee structures, and

8

other contract terms" that "are considered trade secret and highly confidential information to Marqeta's business." ECF No. 9-5 ¶ 3; *see also* ECF No. 1-9 ¶ 2. That sounds logical, and the Court has no reason to doubt that assertion. Accordingly, to obtain the documents sought by RFP 2, Antitrust Plaintiffs must "show[] a substantial need for the . . . material that cannot otherwise be met without undue hardship . . ." Fed. R. Civ. Proc. 45(d)(3)(C)(i).

For RFP 2, the Court finds that Antitrust Plaintiffs have not shown a substantial need for the requested material. For their first theory of relevance – the Honor All Cards rule – the Court does not see why that requires any discovery at all from Marqeta. That rule was established by Visa and Mastercard. Whatever effect it has is felt by merchants. Antitrust Plaintiffs offer no explanation about why they need to take invasive discovery into all of Marqeta's business relationships to understand the Honor All Cards rule. At the hearing they argued that Marqeta's high-priced card is relevant because many merchants would otherwise refuse to do business with BNPL providers at all, and the Honor All Cards rule forces them to do so. But in that sense Marqeta's high-priced card is just like any other high-priced card: it is a card merchants would prefer not to take but are forced to by the Honor All Cards rule. Visa and Mastercard set that rule, and Antitrust Plaintiffs can take discovery about that rule and how it works from the defendants in the underlying litigation.

As for the second theory of relevance – that Visa and Mastercard insist the interchange fees are necessary to allow issuing banks to recover transaction costs and provide benefits to cardholders – Antitrust Plaintiffs themselves observe that Marqeta is not a bank and has no cardholders. The Court understands why Antitrust Plaintiffs find Marqeta interesting. In the underlying litigation, Visa and Mastercard have apparently been saying the interchange fees are necessary to cover the issuing banks' transaction costs and to provide benefits to cardholders, and here we have an example of a company that is not a bank pocketing part of that interchange fee. The problem, though, is that Marqeta is not a bank, so it is not likely to have documents about the costs banks incur, and because it does not have any cardholders, it won't have documents about the fees that are necessary to provide benefits to cardholders.

There is also the problem that even if there is something possessed by Marqeta that is

requested by RFP 2 and that is relevant to Visa and Mastercard's defense of the interchange fees, the RFP is massively overbroad in seeking Marqeta's confidential agreements with all of its partners and customers. Accordingly, the Court does not think Antitrust Plaintiffs have shown a substantial need for these materials.

The deposition topics fare no better. It is difficult to connect either theory of relevance to any of the depo topics, and Antitrust Plaintiffs do not try. Topics 1-5 and 14-15 seek broad testimony about Marqeta's business and do not seem tailored to obtaining testimony that would be relevant to the underlying litigation. Topic 3, 14 and 15 are also partly duplicative of documents Marqeta has agreed to produce in response to RFPs 1 and 5. Topics 4 and 5 call for confidential commercial information, and Antitrust Plaintiffs have not shown a substantial need for that testimony. For topics 6, 8, 9, 10, 11 and 12, all of that information could be obtained from Visa or Mastercard in the underlying litigation. At the hearing Antitrust Plaintiffs argued that Visa and Mastercard cannot testify about Marqeta's goals, motivations, expectations, and so on, in doing business with Visa and Mastercard. However, none of these topics ask about such matters, which in any event do not seem relevant to litigation in which Marqeta is not a defendant. Marqeta's assertion that it has nothing responsive to RFP 3 would seem to imply that no one can testify about topic 7, which regardless relates to the general subject of communications or agreements with Visa or Mastercard, which information could be obtained from Visa or Mastercard. There is no need to subpoena Marqeta to testify on any of these topics; they are all an undue burden. *See* Fed. R. Civ. Proc. 45(d)(3)(A)(iv).

**C.    Conclusion**

The Court orders Marqeta to produce the materials it has agreed to produce, *see* Fed. R. Civ. Proc. 29(b) (parties may enter into stipulations regarding discovery), and grants Marqeta's motion to quash the remainder of the subpoenas.

**IT IS SO ORDERED.**

Dated: August 18, 2022

THOMAS S. HIXSON
United States Magistrate Judge

10